**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JUBILANT DRAXIMAGE INC.,

        *Plaintiff*,

    v.

UNITED STATES INTERNATIONAL
TRADE COMMISSION,

        *Defendant*.

Civil Action No. 19-1494 (RDM)

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jubilant DraxImage Inc. ("JDI") is one of only two companies that manufacture medical devices used for Cardiac Positron Emission Tomography, a noninvasive imaging procedure that helps doctors evaluate patients for coronary artery disease. JDI's competitor, Bracco Diagnostics Inc. ("Bracco"), previously held a monopoly in the production of these devices and has engaged in a long-running effort to exclude JDI, which is based in Canada, from the U.S. market. During the pendency of proceedings before the United States International Trade Commission (the "Commission") to determine whether JDI's products infringe Bracco's patents, the Commission ordered JDI to disclose publicly portions of its brief, which JDI had redacted. JDI objected to making public parts of its brief that cite or reference Bracco's patents based on a concern that Bracco could use JDI's references to specific portions of Bracco's lengthy patent claims, which are public, to infer the manner in which JDI has attempted to engineer around Bracco's patents, which is not public. Although JDI has now prevailed before the Commission on the merits of the patent claims, the dispute over the redactions continues.

1

The Court granted JDI's previous motion for a preliminary injunction on the ground that the Commission's initial order was internally inconsistent, with no coherent basis for which redactions it approved and which it rejected.  *Jubilant Draximage Inc. v. U.S. ITC*, 396 F. Supp. 3d 113 (D.D.C. 2019) ("*Jubilant I*").  On voluntary remand, the Commission resolved those inconsistencies by requiring JDI to disclose all of the references or citations to specific portions of Bracco's patent claims, although the Commission did not require disclosure of direct references to JDI's own, confidential design features.  JDI now seeks a second preliminary injunction, this time to prevent the Commission from enforcing the disclosure order entered on remand.  As explained below, JDI has not shown that it is entitled to preliminary relief.

The Court will, accordingly, **DENY** JDI's motion for a preliminary injunction.

## I.  BACKGROUND

The Court's prior opinion—granting JDI's first motion for a preliminary injunction— detailed the litigation's origins.  *Jubilant I*, 396 F. Supp. 3d at 117–19.  The Court repeats and expands upon the key facts here insofar as they are relevant to the current motion.  Based in Canada, JDI is a radiopharmaceutical company, which means that it makes medicines and medical devices that utilize nuclear technology.  Dkt. 18 at 4–5 (Amd. Compl. ¶ 12).  Among JDI's products is the RUBY, a Rubidium Elution System that generates rubidium-82 chloride, "which is used for Cardiac Positron Emission Tomography ('PET'), a non-invasive imaging procedure . . . to evaluate regional myocardial perfusion in adult patients with suspected or existing coronary artery disease."  *Id.* at 6 (Amd. Compl. ¶ 16).  In layman's terms, the RUBY is a medical device that produces a substance used in PET scans of the heart.

For many years, JDI's competitor, Bracco, was the only supplier of such devices to the U.S. market.  *Id.* at 10 (Amd. Compl. ¶ 26).  Then in 2007, JDI licensed technology, developed

at the Ottawa Heart Institute, for what it believed would be a superior product to Bracco's, a computerized model that could deliver both better performance and increased safety. *Id.* at 7–10 (Amd. Compl. ¶¶ 19–24). Thus began JDI's long-running effort to turn Bracco's monopoly into a duopoly. After nine years developing a rubidium-82 elution system based on the Ottawa Heart technology, JDI obtained approval from the Food and Drug Administration ("FDA") in 2016 to market the RUBY Version 3 in the United States and began doing so the following year. *Id.* at 9 (Amd. Compl. ¶¶ 22–23).

Not to be outdone, Bracco began developing a successor computerized design that it called the "Next-Gen." *Id.* at 10 (Amd. Compl. ¶ 27). In 2008, just one year after JDI licensed the Ottawa Heart technology, Bracco filed a patent application for the Next-Gen design. *Id.* Although Bracco's Next-Gen product has not obtained regulatory approval or gone to market, the 2008 patent gained strategic importance.

JDI alleges that when the FDA announced its approval of the RUBY Version 3 in 2016, Bracco submitted a Freedom of Information Act ("FOIA") request to the FDA and thereby acquired a RUBY product manual from the agency. *Id.* at 11 (Amd. Compl. ¶ 29). Bracco then used that information to draft and file three continuation patent applications that claimed the technology found in the RUBY Version 3. *Id.* Bracco's continuation patents, although copied from JDI's product, could claim priority based on Bracco's earlier patent from 2008. *Id.* Sure enough, as soon as the continuation patents issued, Bracco filed a complaint with the Commission alleging that the RUBY Version 3 infringed Bracco's three patents and asserting violations of Section 337 of the Tariff Act of 1930. *Id.* (Amd. Compl. ¶ 30). The Commission instituted an investigation in May 2018. *Id.*

JDI made the next move.  In response to Bracco's complaint with the Commission, JDI developed two new versions of the RUBY—Versions 3.1 and 4—that were "specifically designed to avoid infringement of the three Bracco patents asserted in the investigation."  *Id*. at 12 (Amd. Compl. ¶ 32).  And in a preemptive strike, JDI then filed a motion for summary determination—the equivalent of a motion for summary judgment—in the underlying Commission proceeding, seeking a ruling that the redesigned RUBY Versions 3.1 and 4 did not infringe Bracco's patents.  *Id*. at 13 (Amd. Compl. ¶ 36); *see also* Dkt. 21-6 (Ex. F).

The public version of JDI's motion was heavily redacted.  *Id.*  The Commission's regulations permit parties to redact portions of their filings that would reveal confidential business information.  The Commission's rules define "[c]onfidential business information" as:

> [1] information which concerns or relates to the trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, [2] the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained . . . .

19 C.F.R. § 201.6(a)(1).  The Commission applies this Rule in a two-part test that mirrors the language of the Rule itself: first asking whether the proposed redactions concern or relate to trade secrets or other sensitive commercial information, and, second asking whether disclosure would either harm the Commission's ability to obtain such information from parties in the future or cause substantial harm to the competitive position of the disclosing entity.  *See Certain Network Devices, Related Software & Components Thereof*, Inv. No. 337-TA-944, Comm'n Declassification Op., 2017 WL 11261370, at *4 (Apr. 19, 2017).  The Commission's confidential business information ("CBI") Rule implements a provision of the Tariff Act, which

prohibits the disclosure of information that is properly redacted pursuant to the Commission's regulations.  The statute provides in relevant part:

> Information submitted to the Commission or exchanged among the parties in connection with [Section 337] proceedings . . . which is properly designated as confidential pursuant to Commission rules may not be disclosed . . . to any person . . . without the consent of the person submitting it.

19 U.S.C. § 1337(n)(1).

Throughout its motion for summary determination, JDI redacted direct references to its trade secret designs of Versions 3.1 and 4.  Dkt. 21-6 (Ex. F).  No one contests that those redactions were proper, and the Commission affirmed the propriety of those redactions on remand.  JDI also designated for redaction references or citations to specific elements of Bracco's patent claims.  *Id.*  Bracco's patents are publicly available.  But the infringement analysis in JDI's motion made direct comparisons between Bracco's patent claims and the designs of RUBY Versions 3.1 and 4, including by adding bold and italic emphases to portions of Bracco's patent claims that JDI argued its designs did not match.  Dkt. 18 at 13 (Amd. Compl. ¶¶ 38–39).  JDI therefore feared that a savvy reader—and, presumably, Bracco in particular— could infer or ascertain aspects of JDI's trade secret designs based on how JDI distinguished its proposed products from elements of Bracco's patent claims.  Dkt. 18 at 13–14 (Amd. Compl. ¶¶ 40–41).  Put differently, a reader could deduce what RUBY Versions 3.1 and 4 *are*, based on what JDI argued they *are not*.  JDI worried that Bracco might use "the specific claim limitations that JDI has designed out of its products" to amend its still-pending patent applications or file new continuation applications aimed at excluding RUBY Versions 3.1 and 4 from the market.  *Id.* at 14 (Amd. Compl. ¶ 41).  JDI therefore "designated for redaction the portions of its motion that discussed, quoted, and/or emphasized the specific claim elements that no longer mapped to

its Version 3.1 and Version 4 systems in the proposed public version" of its brief.  *Id.* at 13 (Amd. Compl. ¶ 40).

The Commission's investigative staff filed a motion challenging JDI's redactions of the references to Bracco's patents.  Dkt. 4-1 (Confidential Ex. A).  The staff argued that "passages quoting from patents or descriptions of the scope of patents and claims do not fall within the Commission's definition of confidential business information."  *Id.* at 4.  JDI opposed the motion, arguing that the public release of "the passages that Staff seeks to reclassify . . . would make obvious the specific redesigned features of the Version 3.1 and Version 4 systems."  Dkt. 4-2 at 4 (Confidential Ex. B).  As an example, JDI noted that one claim limitation involved "a binary design option," and it would therefore be "obvious to anyone reading" that if JDI's design did not make the same choice as Bracco's patent, it must have made the only other possible choice.  *Id.* at 11.  To use a simple analogy, if a product could be only blue or red, saying that a design is not red is the same as saying that it is blue.

On March 21, 2019, a Commission Administrative Law Judge ("ALJ") issued Order No. 31, "Initial Determination Granting-in-Part Commission Investigative Staff's Motion to Declassify Portions of Respondents' Motion for Summary Determination."  Dkt. 4-3 (Confidential Ex. C).  Applying the Commission's two-part test for determining whether proposed redactions fit the definition of "confidential business information" under 19 C.F.R. § 201.6(a)(1), the ALJ addressed JDI's claim that "portions of its motion that merely recite text and figures from the asserted patents should be given the same protection as the details of its products" on the ground that "by identifying specific claim limitations that are not practiced by [JDI]'s revised products, a reader may deduce the operation of those products."  Dkt. 4-3 at 4.

First, the ALJ determined that the redactions of public patent language with respect to Version 3.1 were proper. *Id.* at 4–5. Because those redactions concerned an either/or "binary design decision," the ALJ agreed that declassification "would reveal a confidential design feature of [JDI]'s product." *Id.* But the ALJ rejected JDI's proposed redactions of public patent language as it related to Version 4. *Id.* at 5–6. With respect to those redactions, the ALJ determined that "it is not true, as a factual matter, that a reader can deduce the configuration of [JDI's] product from [those specific Bracco patent claim] statements" because "[m]ultiple possibilities exist . . . that avoid[ ] the limitation in question." *Id.* at 5–6. The ALJ, accordingly, concluded that specific references to Bracco's patents related to RUBY Version 4 "do not constitute [JDI's] confidential business information" and ordered JDI "to file a replacement public version of its motion for summary determination with the improper redactions removed." *Id.* at 6.

JDI appealed to the Commission. Dkt. 4-4 (Confidential Ex. D). Arguing that the ALJ's focus on whether the specific design choices "involve[d] a binary, either-one-or-the-other choice . . . misses the point," JDI stressed "that early identification of the emphasized claim limitations will reveal to Bracco the specific limitations that [JDI's] Version 4 products omit, which would allow Bracco to file new applications containing claims that simply omit the designed-around limitations." *Id.* at 15. On May 6, 2019, the Commission issued a Notice of Commission Decision to Review in Part an Initial Determination Granting-in-Part a Motion to Declassify. Dkt. 1-1 (Compl. Ex. A). In a single sentence, the Commission announced its decision to review in part the ALJ's order and to affirm with one slight modification—adding one redaction to a section heading. *Id.* at 3. The Commission did not specify which portions of the ALJ's decision it did or did not review. *Id.*

The Commission stayed its determination to provide JDI time to seek judicial review.  *Id.*
JDI filed this lawsuit on May 22, 2019, asserting claims under the Administrative Procedure Act
("APA"), 5 U.S.C. § 701 *et seq*.  Dkt. 1.  JDI also sought a preliminary injunction, Dkt. 3, and,
on July 10, 2019, the Court granted that motion, *Jubilant I*, 396 F. Supp. 3d at 126.  The Court
noted that JDI raised a "host" of APA challenges to the Commission's decision to permit
redaction of Bracco patent claim elements relating to the "binary" design choices of Version 3.1
but not elements concerning the "non-binary" possibilities of Version 4.  *Id.* at 120.  The Court
focused on just one contention—that the Commission's decisions were internally inconsistent,
rendering the agency's action arbitrary and capricious under 5 U.S.C. § 706(2)(A).  *Id.* at 121.
As the Court observed, "on multiple occasions, the Commission reached inconsistent results as
to identical or equivalent language."  *Id.*  JDI was likely to succeed on the merits of that claim,
the Court concluded, because "the specific redactions proposed by the Commission are internally
inconsistent and run counter to the reasons given by the agency."  *Id.* at 123.

As for irreparable harm, the Court determined that, by permitting JDI to redact Bracco's
patent information related to Version 3.1, the Commission had conceded that, at least in some
instances, publicly available patent claims could constitute CBI under the Commission's rules—
a determination that included, by definition, a finding of potential harm.  *Id.* at 124 (observing
that "the Commission has already conceded its core premise").  Because permitting the
Commission to release the disputed material at the outset of the litigation would destroy the very
right that JDI sought to protect, the Court had "little trouble concluding that the injury would be
irreparable."  *Id.* at 125.  Finally, the Court also found that the balance of equities and the public
interest tipped in JDI's favor.  *Id.* at 125–26.  The Court, accordingly, enjoined the Commission

from disclosing any portion of JDI's motion for summary determination. *Id*. at 126. On July 25, 2019, the Court granted the Commission's motion for voluntary remand. Dkt. 17.

In parallel with the dispute over redactions, JDI prevailed on the merits in the Commission proceedings as to all three of its designs. On February 8, 2019, the ALJ issued an initial determination that RUBY Version 3 infringed Bracco's patents but also held that neither Version 3.1 nor Version 4 infringed the patents. *See* Dkt. 12-2 at 3 (Ex. 2). The Commission declined to review that decision. *Id.* Then, on August 1, 2019, after the Court had remanded the redaction question, the ALJ ruled in favor of JDI on Bracco's challenge to RUBY Version 3 as well, and on December 11, 2019, the Commission affirmed. Dkt. 27-3 (Ex. B). The Commission determined that the disputed claims in Bracco's three continuation patents were invalid because they were obvious given the Ottawa Heart technology. *Id.* at 12–13. That decision is on appeal to the Federal Circuit.[1] *See Bracco Diagnostics Inc. v. ITC*, No. 20-1358 (Fed. Cir.). At least for now, JDI has won before the Commission across the board.

On remand from this Court, the Commission sought further briefing from the parties and on March 6, 2020 issued a "declassification" opinion in which it devoted far more than one sentence to the propriety of JDI's proposed redactions. Dkt. 21-5 (Ex. E). To JDI's detriment, the Commission resolved the inconsistencies in its previous decision by declassifying all quotations from or references to public patent language, regardless whether the information related to Version 3.1 or Version 4, along with any "bare legal conclusions of infringement or

---

[1] In parallel litigation, JDI filed petitions for *inter partes* review with the United States Patent and Trademark Office, challenging Bracco's three continuation patents. On February 6, 2020, in three lengthy written decisions, the Patent Trial and Appeal Board held the disputed claims in all three patents invalid. *See Jubilant DraxImage Inc. v. Bracco Diagnostics Inc.*, Nos. IPR 2018-01448, IPR 2018-01449, IPR 2018-01450 (P.T.A.B. Feb. 6, 2020). Bracco has appealed those decisions to the Federal Circuit as well. *See Bracco Diagnostics Inc. v. Jubilant DraxImage Inc.*, No. 20-1696 (Fed. Cir.).

non-infringement" comparing JDI's products to Bracco's patents.  *Id.* at 2.  The Commission also clarified that it had not reviewed the ALJ's "binary distinction" in its previous ruling, *id.* at 2, and now rejected it as "inconsistent with the present determination as well as with other Commission and district court precedent," *id.* at 8.

To determine whether JDI's proposed redactions met the definition of "confidential business information" in Rule 201.6, the Commission applied its two-part test.  *Id.* at 6–7.  Both prongs must be satisfied for information to qualify as CBI under the regulation.  The Commission concluded that "public patent information and bare legal conclusions of infringement or non-infringement do not satisfy the definition of 'confidential business information' under Commission Rule 201.6."  *Id.* at 7.

First, the Commission asked whether the information at issue is "information which concerns or relates to . . . trade secrets . . . or other information of commercial value."  *Id.* at 6–7 (internal quotations and citations omitted).  The Commission rejected JDI's broad reading of "concerns or relates to" in Rule 201.6 as "quite literally, unprecedented."  *Id.* at 10.  The Commission found it "highly probative" that JDI could point to no administrative or judicial precedent "that has accepted a theory in which patent claim language can be redacted as protected CBI."  *Id.* at 9–10.  Relying on its own precedents, citations to district court opinions, and references to the redaction practices of the Federal Circuit, the Commission concluded that "[p]ublic information is not transformed into CBI simply because it coincides with a feature of [JDI's] Version 3.1 and Version 4 products."  *Id.* at 9–12.

Likewise, the Commission rejected the premise that bare legal conclusions constitute confidential business information.  "We disagree with [JDI]'s argument that the absence of claimed features can be CBI . . . ."  *Id.* at 10.  The Commission reasoned that JDI's competitors

could just as easily infer aspects of its product designs from public information, including

Bracco's patents and the Ottawa Heart designs, as from the references to public information in its

brief. *Id.* at 10–11. The references that JDI sought to redact were "nothing more than the typical

analysis performed by parties in patent litigation; it does not reveal information that is

proprietary, confidential, or worthy of trade secret protection." *Id.* at 12.

Second, the Commission asked whether "the disclosure of such information [is] likely to

have the effect of either (1) impairing the Commission's ability to obtain such information as is

necessary to perform its statutory functions, or (2) causing substantial harm to the competitive

position of the person, firm, partnership, corporation, or other organization from which the

information was obtained." *Id.* at 7 (internal quotations and citations omitted). The Commission

addressed JDI's argument that "Bracco can use the non-infringement contentions to draft claims

that read on [JDI]'s Version 3[.1] and Version 4 products and then initiate patent litigation based

on such claims." *Id.* at 13. But the Commission found that this theory of harm was

"speculative," especially given the Commission's holding that Bracco's contested patent claims

were invalid based on prior art. *Id.*

The Commission therefore ordered declassified all references to Bracco's patent claims

in JDI's brief. *Id.* at 17. But it again affirmed the redaction of direct references to the designs of

JDI's Versions 3.1 and 4. *Id.* On March 19, 2020, JDI returned to this Court, filing an amended

complaint alleging that the Commission's remand decision violated the APA. Dkt. 18. On April

17, JDI filed a second motion for preliminary injunction. Dkt. 24. The motion is now fully

briefed and ripe for decision.

## II. ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008), but "only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To secure a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The first factor is the "most important." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). "The last two factors," moreover, "'merge when the Government is the opposing party.'" *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Before the Supreme Court's decision in *Winter*, the D.C. Circuit applied a "sliding-scale" approach to the preliminary injunction analysis under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Since *Winter*, however, the court of appeals has hinted on several occasions "'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)); *see also Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"). But it has repeatedly declined to decide the issue. *See, e.g.*, *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016); *see also Am. Meat Inst. v. U.S. Dep't of Agric.*, 746 F.3d 1065, 1074 (D.C. Cir.

2014), *reinstated in relevant part by* 760 F.3d 18 (D.C. Cir. 2014) (en banc); *Sherley*,

644 F.3d at 393.

As explained below, the Court concludes that each of the four factors weighs against

granting JDI's motion for a preliminary injunction.

**A.     Likelihood of Success on the Merits**

In its previous opinion, the Court concluded that JDI was likely to succeed on the merits

because the Commission's prior decision did not apply a consistent rule or reach consistent

results in its treatment of like requests for redactions. *Jubilant I*, 396 F. Supp. 3d at 121–22.  On

remand, the Commission eliminated those inconsistencies by uniformly rejecting all of JDI's

proposed redactions of citations to and quotations from Bracco's patents.  Dkt. 18-1 (Ex. 1); Dkt.

21-5 (Ex. E).  No longer able to attack the Commission's decision on the ground of

inconsistency, JDI now presses a variety of other APA claims, both procedural and substantive.

Dkt. 24-1 at 18–31.

Most substantially, JDI argues that the Commission's determination that JDI's proposed

redactions did not satisfy the definition of CBI in Rule 201.6 is arbitrary and capricious in

violation of the APA.  *Id.* at 21–29.  JDI correctly reads federal law as imposing on the

Commission a "non-discretionary duty not to disclose information" that is designated as

confidential under the Commission's regulations.  *Id.* at 17; *see* 19 U.S.C. § 1337(n)

("Information submitted to the Commission . . . which is properly designated as confidential

pursuant to Commission rules may not be disclosed . . . .").  According to JDI, moreover, all of

its proposed redactions come within the plain meaning of the Commission's definition of CBI—

both as to whether its references to Bracco's patents relate to its trade secrets and whether

disclosure of those references is likely to cause substantial harm to its competitive position.  Dkt.

24-1 at 5, 17, 21–29 (citing 19 C.F.R. § 201.6(a)(1)).  On the first prong, JDI argues that the

Commission's myopic focus on the public nature of Bracco's patent language prevented it from

adequately considering whether that language, when read in context, would give away JDI's

trade secret designs of RUBY Versions 3.1 and 4.  *Id.* at 23.  As to the second prong, whether

disclosure is likely to cause substantial harm to its competitive position, JDI asserts that "[i]f the

[Commission] were to disclose the specific claim limitations that JDI applied to its new designs

to avoid Bracco's copied claims, Bracco likely would . . . draft new claims using [Commission]-

published information as a blueprint, and restart new litigation against JDI's redesigned

systems."  *Id.* at 27.  For those reasons, JDI contends that the Commission's action was arbitrary

and capricious under 5 U.S.C. § 706(2)(a).  *Id.* at 19.

      1.     *Likelihood that Disclosure Will Cause Substantial Competitive Harm*

In its briefs, JDI focused most of its fire on the Commission's determination, at the first

step of the Rule 201.6 test, that public patent information does not become CBI even when that

public information, when read in context, might reveal aspects of a firm's secret product designs.

*See* Dkt. 21-5 at 9–12 (Ex. E); Dkt. 24-1 at 21–25.  But, as explained above, to qualify as CBI

under Rule 201.6, a party's proposed redactions must satisfy both prongs of the test.  *See*

*Network Devices*, 2017 WL 11261370, at *4.  In order to demonstrate a likelihood of success on

the merits, therefore, JDI must show that the Commission's reasoning was arbitrary and

capricious as to both prongs.  And conversely, if the Commission's decision was reasonable in

concluding that JDI's proposed redactions failed to satisfy either prong, the decision must be

upheld.  Because the analysis is more straightforward with respect to the second leg of the test—

which requires that "disclosure . . . is likely to have the effect of . . . causing substantial harm to

[JDI's] competitive position," 19 C.F.R. § 201.6(a)(1)—the Court will begin its review of the Commission's decision with the question of JDI's likelihood of suffering substantial harm.

The APA requires "reasoned decisionmaking." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983). The Court must, accordingly, assess whether the agency considered "the relevant factors and whether there has been a clear error of judgment." *Id.* at 43 (quotation marks omitted); *see also Judulang v. Holder*, 565 U.S. 42, 53 (2011). "The scope of review under the 'arbitrary and capricious' standard," however, "is narrow," and the Court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. Rather, the Court must "presume[] the validity of agency action." *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003). All that the APA requires is that "the process by which [an agency] reaches [its] result [is] logical and rational." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998). The Court must uphold the Commission's action so long as it "considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (quotation marks omitted).

By this deferential standard, the Commission's decision was lawful. With respect to harm, the Commission addressed two arguments from JDI that disclosure would injure its competitive position. Dkt. 21-5 at 13 (Ex. E). First, the Commission considered JDI's primary argument that "Bracco can use the non-infringement contentions to draft claims that read on [JDI]'s Version 3[.1] and Version 4 products and then initiate patent litigation based on such claims." *Id.* (citing Dkt. 21-1 at 10–11 (Ex. A)). The Commission also acknowledged JDI's alternative argument that disclosure would permit other firms to "develop competitive strategies

against the new designs earlier than they otherwise would be able to." *Id.* (quotation marks omitted) (citing Dkt. 21-1 at 11 (Ex. A)).

The Commission rejected these arguments for several reasons. First, the Commission reasoned that JDI's theory of harm was "speculative," especially given that the Commission had found Bracco's patent claims invalid as obvious based on prior art. *Id.* JDI's brief before the Commission had argued that Bracco might "use the motion's discussion of the elements to draft new patent claims in continuation applications to cover the redesigned systems, which could include simply eliminating the specific claim limitations that JDI designed around." Dkt. 21-1 at 11 (Ex. A). The Commission found this unpersuasive. If Bracco could have patented claims with broader scope, the Commission reasoned, it would have done so already, regardless of what it might learn about JDI's designs. Dkt. 21-5 at 13–14 (Ex. E). More to the point, because Bracco's narrower patent claims were found invalid as obvious, the Commission concluded that it is unlikely that any broader—and therefore even more obvious—claims would be patentable. *Id.* The Commission thus determined that "it is speculative to assume either that Bracco can or will amend its claims at all, much less that it will do so as a result of the specific disclosures here." *Id.* at 14. Additionally, the Commission observed that JDI's alleged harm was simply permissible competitive activity on the part of Bracco. *Id.* at 14 n.12 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("[T]here is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market[.]")). Finally, the Commission noted that, because JDI itself filed the motion for summary determination as to Versions 3.1 and 4, JDI "should have reasonably expected that it would be required to disclose its non-infringement contentions on a claim element-by-element basis." *Id.* at 14–15.

In its preliminary injunction motion, JDI repeats its argument that disclosure of the public patent claims and non-infringement contentions it sought to redact would cause competitive harm because revealing that information would increase the risk of Bracco initiating further patent litigation.  Dkt. 24-1 at 27.  Bracco has crafted continuation patents based on JDI's designs once before, and "[i]f the [Commission] were to disclose the specific claim limitations that JDI applied to its new designs to avoid Bracco's copied claims, Bracco likely would employ th[at] tactic again, draft[ing] new claims using [Commission]-published information as a blueprint, and restart[ing] new litigation against JDI's redesigned systems."  *Id.*  To explain why this theory of harm is not unprecedented, JDI draws an analogy to patent prosecution bars, which prevent lawyers who gain access to another party's confidential product designs in patent litigation from prosecuting patent claims in a related field.  *Id.* at 26.  In JDI's telling, the existence of such bars shows that "the risk of harm in the current case is routinely recognized." *Id.* at 27.  JDI also objects to the Commission's statement that JDI's alleged harm is just permissible competitive activity by Bracco.  *Id.* at 28.  Although "it certainly is permissible for companies to draft patent claims against their competitors' products using publicly available information," JDI argues that does not support the Commission disclosing "non-public, properly designated, confidential business information."  *Id.*  Likewise, JDI contends that the Commission erred in holding that JDI brought disclosure on itself by seeking summary determination as to Versions 3.1 and 4, because JDI filed its motion with the Commission on the understanding that its CBI would be protected.  *Id.* at 28–29.

Although the Court may not agree with every point in the Commission's analysis, the Commission reasonably concluded that JDI's theory of harm was speculative.  JDI's principal

argument for why disclosure will likely lead to substantial harm depends on a chain of potential future events.  As explained in its brief before the Commission, JDI fears that Bracco will:

> (1) obtain a copy of the motion with the disallowed redactions,
>
> (2) identify from the declassified redactions the specific claim elements that JDI designed around in developing the Version 3.1 and Version 4,
>
> (3) use the motion's discussion of the elements to draft new patent claims in continuation applications to cover the redesigned systems, which could include simply eliminating the specific claim limitations that JDI designed around, and
>
> (4) use the new patents to initiate patent infringement litigation against Respondents based on the Version 3.1 and Version 4 systems.

Dkt. 21-1 at 11 (Ex. A).  Even if JDI is correct about the first two links in that chain, the Commission reasonably concluded that its theories as to the third and fourth are speculative, especially given the Commission's merits determination that the disputed claims in Bracco's three continuation patents are invalid.  And even accepting that JDI is correct that Bracco has tried this gambit before—obtaining the design of the RUBY Version 3 through a FOIA request and then drafting continuation patents based on that design in an attempt to exclude the RUBY Version 3 from the market—that first attempt failed.  The Commission held that the disputed claims in Bracco's continuation patents were invalid as obvious based on prior art.  Dkt. 27-3 (Ex. B).  With that premise in mind, the Commission reasonably concluded that any patent claims Bracco might try to assert by "simply eliminating the specific claim limitations that JDI designed around" would be even more general and obvious—and therefore would likely be invalid too.  Dkt. 21-1 at 11 (Ex. A).  (Of course, it is possible that the Federal Circuit will reverse the Commission and hold that Bracco's patents are valid, but insofar as JDI's theory of harm relies on that possibility, it is even more speculative.)  Further, if Bracco could have patented broader claims, it had plenty of incentive to do so in the first place, namely to increase

18

the scope of its protection.  Dkt. 21-5 at 13–14 (Ex. E).  Bracco's attempt to patent only the narrower claims in its three continuation patents signals its recognition that broader claims were not patentable.

In its briefs, JDI does not even acknowledge, much less address, the Commission's determination that the failure of Bracco's first attempt to draft continuation patents based on JDI's designs might reduce the probability that Bracco might try the same strategy again.  By failing to grapple with what impact its victory on the underlying patent claims might have on its theory of harm, JDI has not provided the Court with any non-speculative reason to believe that Bracco could—or would—seek to amend its patents to cover the technology that Bracco might infer JDI has now deployed.  The Commission's decision that JDI did not face a substantial likelihood of harm from further patent litigation was neither arbitrary nor capricious.

JDI briefly hints at an alternative theory of harm.  In its submissions to the Commission on remand, JDI argued in a single sentence that irrespective of Bracco's potential patent strategies, "the disclosure of information about the technical details of the products before they become public would enable Bracco to develop competitive strategies against the new designs earlier than they otherwise would be able to, which will likely cause substantial harm to JDI."  Dkt. 21-1 at 11 (Ex. A).  The Commission's conclusion that JDI's risk of facing substantial competitive harm was speculative is sufficient to address this single sentence in JDI's remand brief.  "[A]n agency's decision" need not "be a model of analytic precision to survive a challenge;" rather, "[a] reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974)).  Here, the Commission acknowledged JDI's contention that disclosure of

the asserted patent dissimilarities would allow Bracco to develop competitive strategies that would likely harm JDI and rejected that contention as unduly speculative.

The Commission's conclusion was reasonable.  Indeed, by JDI's own admission, Versions 3.1 and 4 were "specifically designed to avoid infringement of the three Bracco patents asserted in the investigation."  Dkt. 18 at 12 (Amd. Compl. ¶ 32).  JDI did not argue that these updated products included better technology or that they were superior designs in any other way. Versions 3.1 and 4 are creatures of patent litigation, and nothing in the record suggests that those designs have any competitive value aside from not infringing Bracco's patents or that JDI's competitors would have any interest in the designs of Versions 3.1 and 4 or in developing competitive strategies against them.  Nor will the Commission's order reveal the designs of RUBY Versions 3.1 and 4 in their entirety; at most, removing the redactions will disclose the ways in which certain aspects of JDI's designs differ from Bracco's patents.  Absent more substantiation for this argument, JDI has not carried its burden to show that the Commission's decision was arbitrary and capricious for failing adequately to consider potential competitive harms other than the risk that JDI may be subjected to further patent litigation.

Finally, in its reply brief, JDI asserts that it was inconsistent for the Commission to rule that its theory of harm is invalid as to the redactions the Commission rejected, while at the same time affirming that same theory of harm with respect to the redactions that the Commission approved.  Dkt. 29 at 13–14.  Although the Court in its prior opinion found that JDI had a likelihood of success on the merits based on internal inconsistencies in the Commission's redaction rulings, JDI did not argue on remand or in its opening brief in support of its pending motion for preliminary injunction that the Commission's updated redactions remained inconsistent.  Because JDI presented this argument for the first time in its reply, the Court need

not consider it.  *See United States v. Apodaca*, 251 F. Supp. 3d 1, 5 (D.D.C. 2017).  But even if JDI had timely raised this argument, the Court would be unpersuaded.  It was reasonable for the Commission to draw a distinction between the risk of harm from direct disclosure of JDI's trade secret designs and the lesser risk associated with the inferences that competitors might draw based on how JDI presents public patent information and non-infringement contentions in the context of its brief.

The Court thus holds that the Commission acted rationally in deciding that JDI's proposed redactions did not satisfy the definition of CBI in Rule 201.6 because JDI had not shown a likelihood that disclosure would lead to substantial harm to its competitive position.[2] Because the Rule's definition of CBI is a two-key system—that is, information qualifies as CBI only if it both concerns or relates to trade secrets *and* is likely to cause substantial harm if disclosed—affirming the Commission's decision on the harm prong alone is sufficient to demonstrate that JDI does not have a likelihood of success on the merits.  The Court therefore need not reach JDI's arguments on the first prong that the Commission erred, both procedurally and substantively, in its analysis of whether the information JDI seeks to redact "concerns or relates to [JDI's] trade secrets."  *See* 19 C.F.R. § 201.6(a)(1).  Any such error would necessarily be harmless.  *See* 5 U.S.C. § 706 (requiring courts reviewing agency action to take "due account . . . of the rule of prejudicial error"); *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d

_____

[2] Given that the Court concludes, at the end of its merits analysis, that the Commission acted rationally in deciding that JDI was not likely to suffer competitive harm from disclosure, one might wonder whether JDI has alleged an injury in fact sufficient to establish its standing to bring this lawsuit in the first place.  But when assessing standing, courts generally presume that the plaintiff will succeed on the merits of their claim.  *See U.S. House of Reps. v. Mnuchin*, No. 19-5176, slip op. at 3, 7–8 (D.C. Cir. Sept. 25, 2020); *Schnitzler v. United States*, 761 F.3d 33, 40 (D.C. Cir. 2014).  And the Court should "avoid resolving issues contested on the merits under the banner of standing."  *Pietrangelo v. Refresh Club, Inc.*, No. 18-cv-1943, 2019 WL 2357379, at *4 (D.D.C. June 4, 2019).

1112, 1121 (D.C. Cir. 2010) ("The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration." (citation, internal brackets, and internal quotation marks omitted)).

To be sure, even if the Court were to reach JDI's arguments with respect to the first prong, the Court is unpersuaded that the Commission's action was either procedurally invalid or arbitrary and capricious with respect to that prong.

2.      *Public Information Concerning or Relating to Trade Secrets*

JDI first contends that the Commission's "broad, categorical pronouncement" that publicly available patent claim language and legal conclusions of non-infringement do not constitute CBI "effectively amends," rather than interprets, the agency's definition of CBI in Rule 201.6.  JDI argues that, as an amendment to a regulation, this new policy is unlawful because the Commission did not promulgate it in accordance with the APA's notice and comment requirements.  Dkt. 24-1 at 20; *see* 5 U.S.C. § 553.  The Commission responds that it has discretion to make policy through either rulemaking or adjudication and that proceeding by "adjudication makes reasonable sense under the present circumstances: applying a general rule to a specific context."  Dkt. 27 at 29.  The Commission further maintains that it was merely interpreting, rather than amending, Rule 201.6.  *Id.*

The Commission is correct that agencies have discretion to make policy through either rulemaking or adjudication.  *See SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 201–03 (1947).  The Commission is also correct that one mechanism is usually just as good as the other: "Most norms that emerge from a rulemaking are equally capable of emerging (legitimately) from an adjudication, and accordingly agencies have very broad discretion whether to proceed by way

of adjudication or rulemaking." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 536 (D.C. Cir. 2007) (internal quotation marks and citations omitted).  But that does not answer JDI's argument, because here the agency was not writing on a blank slate.  *Cf. NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294(1974) (explaining that "the choice between rulemaking and adjudication lies *in the first instance* within the [agency]'s discretion" (emphasis added)).  Rather, the Commission had already promulgated Rule 201.6 pursuant to the APA's notice and comment procedures.  Once promulgated, that Rule carried the force of law, and the Commission was required to follow it in subsequent adjudications.  The Commission could change the Rule, as JDI argues, only in the same way it created the Rule: through notice and comment rulemaking.  *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) (holding that the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance").

    As a result, the question is whether the Commission's pronouncement that "patent language and legal conclusions of infringement or non-infringement are not CBI," Dkt. 21-5 at 10 (Ex. E), constitutes a *legislative* amendment to Rule 201.6 or an *interpretative* application of the Rule.  The distinction between legislative and interpretive rules is a subject "of much scholarly and judicial debate," *Perez*, 575 U.S. at 97, and the D.C. Circuit has not yet announced a bright-line rule for distinguishing between them.  It has, however, provided several guiding principles for navigating through the "smog."  *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108 (D.C. Cir. 1993) (quotation marks omitted).  Most notably, a legislative rule "purports to impose legally binding obligations or prohibitions on regulated parties," while an interpretative rule "merely interprets a prior statute or regulation, and does not itself purport to impose new obligations or prohibitions or requirements on regulated parties."

*Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–252 (2014); *see also Perez*, 575 U.S. at 97 (explaining that "the critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers" (internal quotations and citations omitted)).  Several factors help operationalize this distinction, including whether there is any basis for enforcement in the absence of the new rule, whether the agency invoked "general legislative authority" in issuing the new rule rather than refining an already-specific statute or legislative rule, and whether "the rule effectively amends a prior legislative rule."  *Am. Mining Cong.*, 995 F.2d at 1112.  The D.C. Circuit has also opined that the distinction "turns on how tightly the agency's interpretation is drawn linguistically from the actual language of the statute or rule."  *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 588 (D.C. Cir. 1997), *abrogated on other grounds by Perez*, 575 U.S. at 100.

Applying those standards here, the Court concludes that the Commission was entitled to decide without notice and comment whether Rule 201.6's definition of CBI covers public patent claims and legal conclusions.  The regulatory definition of CBI is, to be sure, detailed in many respects.  It lists more than a dozen types of records that qualify as CBI, including "information which concerns or relates to the trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization."  19 C.F.R. § 201.6(a)(1).  But the Rule also applies more generally to "other information of commercial value."  *Id.*  That open-ended definition requires interpretation, as does the Rule's indefinite inclusion of not only information that constitutes "trade secrets" but also information that merely "*concerns or relates to . . . trade secrets.*"  19 C.F.R. § 201.6(a)(1) (emphasis added).  Although JDI argues that the information it

seeks to redact "concerns or relates to" its trade secrets, just how closely related the information must be is precisely the sort of gap in the meaning of a regulation that an interpretive rule can fill.  The Commission's interpretation clarifies the reach of an existing rule, rather than establishing a new, legislative rule.  The Commission did not purport to establish new restrictions or obligations; to the contrary, it asserted that its interpretation of the Rule is consistent with decades of its own precedent.  Dkt. 27 at 28.  And the Commission's analysis is tied to the language of the Rule itself, showing a "linguistic" connection between the existing legislative rule and the Commission's interpretation of it.  *Paralyzed Veterans*, 117 F.3d at 588.

JDI also contends that the Commission's interpretation effectively amends the Rule as to the second prong as well, by announcing that public patent information and legal conclusions are not CBI "no matter how much 'harm to the competitive position of the [party]' the disclosure is likely to cause."  Dkt. 24-1 at 19–20 (quoting 19 C.F.R. § 201.6(a)(1)).  But this misapprehends the nature of the Commission's interpretation.  All of the Commission's interpretive work occurred in its analysis of the first prong, where it decided that public patent claims cannot ever concern or relate to trade secrets.  The result of that decision is that public patent claims will not qualify as CBI regardless of the likely harm.  It does not mean, however, that the Commission interpreted the second prong itself. (And, as explained above, the Commission's application, rather than interpretation, of the second prong is alone sufficient to sustain the Commission's action.)

The APA thus did not require the Commission to go through notice and comment rulemaking in order to interpret whether public patent information and legal conclusions "concern or relate to" trade secrets within the meaning of its regulation.  Whether the Commission's substantive answer to that question was permissible under the APA is a closer

25

question.  The Commission recognized and recited JDI's central claim that the redactions in its summary determination motion were needed because the "motion compares new features of the systems with avoided claim limitations, which if not redacted, would make obvious the specific design changes that [JDI] has implemented in the new Version 3.1 and Version 4 systems and alert Bracco to the specific claim elements that need to be changed or deleted from its pending patent applications in order to read on these new systems."  Dkt. 21-5 at 8–9 (Ex. E) (quotation marks omitted).  In rejecting that contention, the Commission placed substantial weight on JDI's inability to cite to any precedent for its claim that public patent elements could become confidential information just because the public patent elements, when read in context, might allow a reader to deduce the confidential information.  *Id.* at 9–10.  Weighing against JDI's position, the Commission cited its own precedents, district court opinions, and the redaction rules of the Federal Circuit.  *Id.* at 9–12.  Of particular relevance, the Commission relied on its previous decision in *In re Certain X-Ray Breast Imaging Devices & Components Thereof*, Inv. No. 337-TA-1063, Comm'n Notice, 2018 WL 6411405, at *2 (Dec. 4, 2018).  In that case, an ALJ rejected a party's request to redact the phrase "post-acquisition processing" on the ground that, "when read in context[,] . . . particular instances of the phrase" would give away aspects of the company's designs.  *See In re Certain X-Ray Breast Imaging Devices & Components Thereof*, Inv. No. 337-TA-1063, Order No. 33, 2018 WL 6837930, at *2–4 (Nov. 2, 2018).  The ALJ was "not persuaded that public information, such as the scope of an asserted claim, can nonetheless be withheld from the public simply because an infringement finding necessarily indicates that the accused product falls within that scope.  *Id.* at *4.  Based on that authority, the Commission concluded that JDI's "claims of confidentiality are, quite literally, unprecedented, and that [JDI] failed to establish a basis for confidentiality for patent language and legal

conclusions of infringement or noninfringement."  Dkt. 21-5 at 10 (Ex. E).  The Commission

also relied on its own policy judgment and experience adjudicating similar claims, observing that

the passages JDI sought to protect were "nothing more than the typical analysis performed by

parties in patent litigation; it does not reveal information that is proprietary, confidential, or

worthy of trade secret protection."  *Id.* at 12.

JDI attacks the Commission's reasoning on several grounds.  It first argues that "the

Commission misreads its own regulation" by focusing on literal trade secrets, when the Rule also

encompasses information that "concerns or relates" to those trade secrets, and by ignoring other

classes of information covered by the Rule, such as sales, shipments, and purchases.  Dkt. 24-1 at

21.  Second, JDI argues that the Commission's remand decision is contradicted by the ALJ's

earlier findings, at least as to the binary design elements of Version 3.1.  *Id.* at 21–22.  Third, JDI

asserts, in various formulations, that the Commission ignored the thrust of its argument by

focusing on the public character of the information in a vacuum without recognizing what that

public information might reveal about JDI's trade secrets in context.  *Id.* at 22–23.

JDI's substantive challenge to the Commission's decision that public patent information

and bare legal contentions cannot constitute information concerning or related to trade secrets

presents a close question.  The Commission's analysis on the first prong is thin and conclusory,

and, at least for binary design decisions, JDI presents a substantial argument that public

information relates to trade secrets when reading the public information in context would give

away those trade secrets.  But ultimately, under the deferential standard that applies to judicial

review of administrative decisions, the Court concludes that the Commission's reasoning was not

arbitrary and capricious for much the same reason that its interpretation of the Rule was

procedurally valid.  The meaning of the phrase "concerns or relates to" is not so obvious as to

render unreasonable the Commission's conclusion that the definition does not encompass public

patent information or bare legal conclusions.  And the Commission is due an additional level of

deference in interpreting its own genuinely ambiguous regulation.  *See Kisor v. Wilkie*, 139 S. Ct.

2400 (2019).  In any event, even if the Commission erred in its analysis of the first prong, its

reasonable conclusion that JDI's theory of harm was speculative is enough by itself to sustain the

Commission's decision.

**B.      Irreparable Harm**

The Court must also consider whether JDI "is likely to suffer irreparable harm in the

absence of preliminary relief."  *Winter*, 555 U.S. at 20.  "[A] showing that irreparable injury is

'likely' is the *sine qua non* for obtaining a preliminary injunction—it is what justifies the

extraordinary remedy of granting relief before the parties have had the opportunity fully to

develop the evidence and fully to present their respective cases."  *Achagzai v. Broad. Bd. of*

*Governors*, No. 14-cv-768, 2016 WL 471274, at *3 (D.D.C. Feb. 8, 2016); *see also Chaplaincy*

*of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to

show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction,

even if the other three factors entering the calculus merit such relief."); *Tex. Children's Hosp. v.*

*Burwell*, 76 F. Supp. 3d 224, 241–42 (D.D.C. 2014); *Trudeau v. FTC*, 384 F. Supp. 2d 281, 296

(D.D.C. 2005), *aff'd*, 456 F.3d 178 (D.C. Cir. 2006).

With respect to irreparable harm, as with the other remaining preliminary injunction

factors, JDI largely rests on its laurels.  It reasons that the Court "already found that the second,

third, and fourth requirements are met" and that "[n]othing has happened since then that merits

disturbing those findings."  Dkt. 24-1 at 18–19.  JDI therefore presented no additional arguments

in its motion as to those factors.  JDI addressed irreparable harm briefly in its reply, but again

emphasized the lack of "changed facts since the Court made its previous ruling."  Dkt. 29 at 19–20.  But as the Commission argues, and contrary to JDI's assertions, the situation has changed in at least one important respect since the Court's previous opinion.  *See* Dkt. 27 at 43–45.

On December 11, 2019, the Commission held the contested claims in Bracco's continuation patents invalid.  Dkt. 27-3 at 12–13, 43 (Ex. B).  That holding undermines JDI's theory of harm, as explained above in the Court's discussion of the harm prong of the Commission's CBI test.  JDI fears that Bracco will figure out aspects of its trade secret designs based on clues in its brief and then use that information to draft new patents claims aimed at excluding RUBY Versions 3.1 and 4 from the market.  But that risk is substantially reduced by the Commission's decision that the contested claims in Bracco's previously issued continuation patents are invalid as obvious in light of prior art.  (And the fact that the Patent and Trademark Appeals Board reached the same result only further undermines JDI's theory of harm.)  As the record now stands, the Court must conclude that any further attempts by Bracco to employ the same strategy would likely meet the same end—JDI certainly has not presented the Court with any reason to believe that the Federal Circuit is unlikely to affirm the Commission's invalidity determination.  The Commission is correct that JDI's theory of harm is "wholly speculative." Dkt. 27 at 45.

It is true that revealing the information in JDI's brief will be irreversible.  Once the information has become public, the cat cannot be put back in the bag.  But JDI's theory is not that harm will result directly from the disclosure of that information but rather from what Bracco might do with the information, which may well be nothing at all.  The Commission's action in removing the redactions from JDI's brief will be irreversible, but JDI has not shown that it will

cause the company irreparable harm.  The Court is therefore unpersuaded that JDI will suffer any irreparable injury from release of the references to Bracco's patent claims in JDI's brief.

**C.      Balance of Equities and Public Interest**

Finally, JDI must show "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "The[se] last two factors 'merge when the Government is the opposing party.'" *Guedes*, 920 F.3d at 10 (internal citation omitted) (quoting *Nken*, 556 U.S. at 435).  Here too, JDI argues that nothing has changed since the Court's previous opinion, in which it found that the final two factors "tip in JDI's favor."  Dkt. 14 at 17.  But upon reexamining the issues, the Court reaches the opposite conclusion on these factors as well.

The Commission asserts an interest in doing its work in public.  Dkt. 27 at 45–47.  The Commission cited its transparency obligations under the Sunshine Act, 5 U.S.C. § 552b, as well as the requirement that it make reasoned decisions under the APA.  Dkt. 27 at 45–47. Dkt. 27 at 45–47.  "The Commission must be able to explain its reasoning to the public at large by at least providing bare legal conclusions of infringement and non-infringement, which includes a claim element-by-element analysis under patent law." *Id.* at 46.  A ruling in favor of JDI in this case would set a precedent that parties before the Commission could use to seek an increased number of redactions in the Commission's opinions themselves, making it more difficult for the Commission to obtain the legitimating benefits of explaining its judgments in public.

In reply, JDI argues that "the public has no right to information that identifies with specificity which claim elements each of JDI's trade secret designs has or does not have" and that Rule 201.6 itself strikes "the appropriate balance between private and public rights."  Dkt.

29 at 21.  These arguments bleed back into the merits because, although the Commission agrees that Rule 201.6 strikes an appropriate balance, the parties disagree on what that balance is.

The Court credits both parties' arguments.  The Commission has an interest in doing its work in public view, but only insofar as public disclosure of its records and proceedings does not reveal trade secrets or other confidential information of the participating parties.  Here, because the Court finds that the Commission reasonably concluded that the information in question is not CBI, and because JDI has not shown that substantial harm is likely to result from disclosure, the balance of equities tips in the Commission's favor.  In its previous opinion, the Court held that "relatively little harm to the Commission" would result from an injunction because, "[i]n the event that the Commission ultimately prevails, JDI will be required to disclose the redacted material in short order."  Dkt. 14 at 17.  The reality is that although a preliminary injunction is temporary relief in the life cycle of a lawsuit, it can still result in substantial delay.  JDI filed its motion for summary determination in October 2018, and now two years have passed with that brief's legal arguments shrouded from public view.  In sum, the Commission's interests in promoting transparency, accountability, and legitimacy outweigh the potential competitive harm to JDI, especially when the extent of that harm is so unclear.

All four factors, accordingly, weigh against the extraordinary relief of a second preliminary injunction in this case.

**CONCLUSION**

For the reasons stated above, it is hereby **ORDERED** that Plaintiff's motion for

preliminary injunction, Dkt. 24, is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 30, 2019